UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAP HOLDINGS, INC.,            ) | |
|                                )| |
|     Plaintiff,     ) | |
|                                )| CIVIL ACTION |
| v.                             )| NO. 12-10751-JGD |
|                                )| |
| ROBERT D. CONNORS and          )| |
| KATHLEEN BENNET CONNORS,       )| |
|                                )| |
|     Defendants.    )| |

**MEMORANDUM OF DECISION AND ORDER
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

January 6, 2014

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, CAP Holdings, Inc. ("CAP"), commenced this action on March 21, 2012 in Middlesex Superior Court,  Therein, CAP was seeking to collect on a judgment issued in favor of Olympic International Bank ("Olympic") against the defendant, Robert D. Connors ("Connors"), arising out of Connors' default on a promissory note held by Olympic.  CAP's complaint made no mention of the fact that the FDIC had taken over Olympic years before, and that the final judgment in Olympic's action against Connors had been issued in favor of the FDIC by the federal court.

Connors removed CAP's action to this court.  CAP responded by filing a motion to remand to state court.  In denying CAP's motion to remand, this court found that as a

result of the FDIC's appointment as the receiver of Olympic in 1992, and subsequent actions of the FDIC in connection with its removal of Olympic's case to federal court, CAP actually is seeking to collect on a federal judgment issued in favor of the FDIC on June 14, 1993.  (See Docket No. 16).

CAP has filed an Amended Complaint seeking a declaratory judgment that it is the owner of the underlying judgment against Connors (Count I) and that Connors is liable to it in the full amount of the judgment.  (Count II).  Connors' wife, defendant Kathleen Bennett Connors ("Mrs. Connors"), also asserts ownership of the judgment against Connors.  This matter is presently before the court on Connors' Motion for Summary Judgment (Docket No. 29) pursuant to which the defendants are seeking summary judgment on the grounds that CAP cannot meet its burden of proving that CAP owns the judgment.[1]  All parties have advised the court that they are not aware of the existence of any additional witnesses who can aid in the explanation of transactions which took place years ago.  Moreover, although given the opportunity to do so, they have not submitted additional information about the corporate structure of the entities which held title to the underlying debt over the years.

For the reasons detailed herein, the defendants' motion for summary judgment is ALLOWED.  After careful consideration of the record, this court finds that CAP cannot

---

[1] Connors filed his motion for summary judgment before Mrs. Connors was added as a defendant in the Amended Complaint.  Both Connors and Mrs. Connors now contend that Mrs. Connors owns the judgment and for convenience this court will refer to the motion as having been filed by both defendants.

sustain its burden of proving that it is more likely than not that it acquired title to the judgment it is seeking to enforce. Rather, the undisputed facts tip in favor of a finding that Mrs. Connors acquired title to the underlying judgment many years before CAP.

## II. STATEMENT OF FACTS[2]

### The Underlying Judgment

On December 11, 1986, Connors, individually and as the Trustee of Landcor Realty Trust, and Edward Simonian, among others, executed a promissory note in favor of Olympic International Bank and Trust Company ("Olympic"). (PF ¶ 1). In 1992, Olympic sued Connors and five others in Suffolk Superior Court to recover on the promissory note in a matter entitled <u>Olympic International Bank and Trust Company v. Robert D. Connors, et. al.</u>, Civil Action No. 90-3140. (Compl. ¶ 6; DF ¶ 1; <u>see</u> <u>also</u> Def. Ex. A). On April 7, 1992, after a jury trial, Olympic obtained a judgment against Connors and Simonian, jointly and severally, in the amount of $611,185.85. (<u>Id.</u>).

Olympic was subsequently declared insolvent and went into receivership; the Federal Deposit Insurance Company ("FDIC") was appointed receiver in June 1992. (PF ¶ 3; Def. Ex. B ¶ 2). The FDIC, as receiver, removed the matter to federal court on or about May 19, 1993. (PF ¶ 4). On June 14, 1993, the federal court entered judgment

---

[2] Unless otherwise indicated, the facts are derived from the First Amended Complaint (Docket No. 31) ("Compl.") and exhibits thereto ("Compl. Ex."); Defendant's Statement of Undisputed Material Facts (Docket No. 29) ("DF"); the exhibits attached to the Memorandum in Support of Defendant's Motion for Summary Judgment (Docket No. 30) ("Def. Ex."); the Plaintiff's Statement of Facts contained in its Opposition to the motion for summary judgment (Docket No. 34) ("PF"); and the exhibits thereto ("Pl. Ex.").

against Connors and in favor of the FDIC ("USDC Judgment" or "the Judgment"). (PF ¶ 5; Def. Ex. C). The Connors contend that Mrs. Connors purchased the USDC Judgment from the FDIC on November 5, 1996 for Ten ($10.00) Dollars and other good and valuable consideration. (DF ¶¶ 4-5; Def. Ex. D). On January 6, 1997, the U.S. District Court issued a First Execution on behalf of Kathleen Bennett Connors, as assignee of the FDIC as Receiver for Olympic, against Edward C. Simonian in connection with the USDC Judgment. (Def. Ex. I). This is at least some evidence that Mrs. Connors had acquired the USDC Judgment in 1996, as the defendants contend.

It is CAP's position that it acquired the USDC Judgment on or about August 25, 2009 through a series of transactions that are described in more detail below. For a better understanding of those transactions, however, a brief overview of the role of the FDIC and Resolution Trust Corporation ("RTC") in connection with failed banks in the 1990s is helpful.[3]

### Role of the FDIC and RTC

In the instant case, both Mrs. Connors and CAP claim title to the USDC Judgment through the transfer of assets to and from various limited partnerships. As a general statement,

---

[3] The RTC ceased to operate on December 31, 1995, and its functions were legally taken over by the FDIC. (See Def. Ex. F at n.2). Before then, the FDIC and RTC worked cooperatively in handling the failed banks' assets. However, neither party in the instant case has identified how the FDIC and RTC interacted with respect to the judgment at issue, although, as detailed below, both had some involvement in the relevant transactions.

> In the late 1980s and early 1990s, the Resolution Trust Corporation (RTC) and the Federal Deposit Insurance Corporation (FDIC) became custodians of an unprecedented number of assets from failed banks and thrifts. The agencies therefore had to develop innovative methods to manage and dispose of the assets. One of the RTC's main methods, known as the equity partnership, was a joint venture between the public and private-sectors.

(Def. Ex. F at 2 of 8).[4] In December 1993, the RTC began the "Judgment, Deficiencies, and Charge-Offs" ("JDC") equity partnership program. (Id. at 4 of 8). It appears that the USDC Judgment was part of this program. As the JDC program has been described:

> The JDC agreements specified a five-year term, with either partner having the option to terminate the agreement after the third year and on each anniversary thereafter, providing that six months' notice was given. Because the assets the RTC contributed to the partnership were impaired by legal constraints or were unsecured and of poor quality, the JDC partnerships typically had a GP [General Partner] that included a firm with collection experience.... The JDC equity partnership transactions were legally structured as partnerships. The RTC's contribution to the partnership was at an established value of 1 percent of the book value of the JDC assets and of 20 percent of the book value for the small balance assets. Because the true value of the assets to be transferred by the RTC into the various partnerships could not be accurately determined, the RTC established a policy at the outset of the JDC program to value the asset contributions in that manner. The RTC based the valuation methodology loosely upon the RTC's historic recovery rates on JDC assets disposed of through auctions and sealed bids.
>
> The GP contributed cash equal to 0.0101 percent of the assets' book value for JDCs and 0.2 percent of the assets' book value for small balance assets ....

---

[4] Def. Ex. F contains excerpts from Chapter 17 of Managing the Crisis: The FDIC and the RTC Experience, published by the FDIC in 1998. (See PF ¶ 12; DF ¶ 6a).

(Id. at 4-5 of 8).  The program then provided for a split of the amounts collected between the GP and RTC.  (Id. at 5 of 8).

## The Parties' Chains of Title

CNF First Associates II, L.P. ("CNF First Associates") entered into a limited partnership with the RTC for the purpose of attempting to recover on various judgments, deficiencies and charge-offs under the JDC program as described above.  (DF ¶ 6a).  CNF First Associates is a Delaware limited partnership whose General Partner was CNF California, L.P. ("CNF California").  (Def. Ex. G).  In turn, CRW California, Inc. ("CRW California") was the General Partner of CNF California.  (Id.).  CRW Financial, Inc. ("CRW Financial") was the corporate parent of CRW California until it sold CRW California on February 2, 1997.  (Def. Ex. H at 2).

Specifically, on January 6, 1994, CNF First Associates and RTC entered into a "Contribution Agreement" which created a JDC limited partnership.  (Def. Ex. K at 3 of 11).  RTC contributed JDC's and small-balance assets to the partnership on a bulk basis. (Id.).  Included in the assets was one labeled simply "Landcor Realty," which carried a book value of $611,185.85.  (Id. at 11 of 11).  CAP contends that this entry reflects the USDC Judgment at issue in this litigation.  While the defendants do not concede this point, it is a logical inference to be made in favor of the non-moving party.  All parties do agree that, at some point, title to the Judgment rested in CNF First Associates.  (See PF ¶ 6; DF ¶ 12a).  Both CAP and Mrs. Connors claim that their title derived from an assignment from CNF First Associates.

**CAP's Chain of Title**

CAP's asserted chain of title is as follows. On December 30, 2003, CNF First Associates, by Michael J. Barrist, President of CNF California (CNF First Associates' General Partner), made a "Blanket Assignment of Assets" to Cadles of Grassy Meadows II, L.L.C. ("Cadles"), thereby conveying certain loans listed on an attached Exhibit A. (Def. Ex. L).[5] Among the loans transferred was "Landcor Realty," with a book value of $611,185.85. (Id. at Exhibit A). On August 2, 2009, Cadles sold and assigned to Big Five Investments, LLC ("Big Five") all of the accounts listed on Exhibit A to a Bill of Sale and Assignment of Accounts. (Def. Ex. M). "Landcor Realty," with a book value of $611,185.85 was one of the accounts. (Id. at Exhibit A). Several weeks later, on August 24, 2009, Big Five sold and assigned assets listed in Schedule "1" attached to an Assignment and Bill of Sale to JB Mortgage Co., LLC ("JB Mortgage"). (Def. Ex. N). "Landcor Realty," with a book value of $611,185.85, was listed on the Schedule. (Id. at Schedule "1"). Finally, effective the next day, August 25, 2009, JB Mortgage sold and assigned to CAP Holdings, Inc. assets listed on Schedule A to an Assignment and Bill of Sale. (Def. Ex. O). The Assignment and Bill of Sale, however, does not seem to have

---

[5] The Contribution Agreement between CNF First Associates and RTC provides that "[n]either of the parties hereto shall have the right to assign any of its rights under this Agreement to any other entity except with the prior written consent of the other party hereto." (See Def. Ex. K ¶ 14). This court has not received any evidence regarding whether RTC gave prior written consent for CNF First Associates to assign its right, title, and interest in the "Landcor Realty" asset to anyone. However, since no one has evidence one way or another, this court will assume that RTC's requisite consent was given.

been signed until almost a year later, on August 17, 2010. (Id. at 3 of 4). Again, "Landcor Realty," with a book value of $611,185.85, was listed on Schedule A. (Id. at Schedule A). CAP claims ownership of the USDC Judgment on the basis of these transactions.

Meanwhile, on February 28, 2011, Recovery Management International ("RMI") sent a letter to Connors stating that it was "the successor in interest to the Olympic International Bank and Trust Company and is the current owner and holder" of the state court Judgment in the amount of $611,185.85. (Def. Ex. P). RMI asserted that there was presently $2,011,320.54 due on the Judgment. (Id.). Connors wrote back that his wife was the owner of the Judgment, which was in fact a federal judgment in favor of the FDIC. (Def. Ex. Q). There is no evidence in the record as to the relationship, if any, between CAP and RMI.

As noted above, CAP commenced an action against Connors in Middlesex Superior Court on March 21, 2012 seeking to recover on the judgment dated April 7, 1992 in the action entitled <u>Olympic International Bank and Trust Company v. Robert D. Connors, et al.</u>, Suffolk Superior Court Civil Action No. 90-3140. (Def. Ex. J). That action was subsequently removed to this court and, as detailed above, is actually a suit to recover under the USDC Judgment entered in favor of the FDIC on June 14, 1993.

## **The Kathleen Bennett Connors Assignment**

The defendants contend that on November 5, 1996, approximately seven years before CNF First Associates' assignment of the "Landcor Realty" loan to Cadles, CNF First Associates assigned the USDC Judgment to Kathleen Bennett Connors in consideration of Ten Dollars and other good and valuable consideration. (Def. Ex. D). The Assignment of Judgment provides as follows:

> WHEREAS, CNF First Associates II, LP, a Delaware Limited Partnership ("Assignor") is the owner of Judgment rendered in the Superior Court of Suffolk County Massachusetts, on January 31, 1992 in Cause No. 90-3140 in favor of Olympic International Bank and Trust Company, Plaintiff, vs. Robert D. Connors, et al. Defendant, for the sum of $611,185.85 plus interest and costs. This Judgment was entered in the United States District Court, District of Massachusetts, No. 93-11107-WD on June 14, 1993 by the Federal Deposit Insurance Corporation, Receiver/Liquidating Agent of Olympic Bank and Trust Company (Plaintiff).
>
> Whereas, Assignor has not previously assigned or pledged its interest in the "Judgment";
>
> NOW, THEREFORE, in consideration of the payment of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby sells, transfers, assigns, delivers, and sets over to Kathleen Bennett Connors, all of Assignor's right, title, and interest to the "Judgment" the liens relating to the "Judgment" and all other rights of CNF to enforcement of the "Judgment".
>
> This Assignment of "Judgment" is made without recourse and without representation or warranty. CNF specifically disclaims any representation with respect to value of or collectability of the "Judgment".

(Def. Ex. D). The Assignment is signed as follows:

> Michael E. Lachs, General Manager

>
> Asset Recoveries Division
> CRW Financial, Inc., General Partner of
> CNF First Associates II, LP, for Limited
> Partner, Federal Deposit Insurance
> Corporation, Receiver of Olympic
> International Bank and Trust Company

(Id.). Mr. Lachs' signature was notarized in Tulsa, Oklahoma, under the following statement:

> This instrument was acknowledged before me on the 5th day of November, 1996, by Michael E. Lachs, General Manager, Asset Recoveries Division, CRW Financial, Inc., General Partner of CNF First Associates II, LP, a Delaware Limited Partnership.

(Id.). As noted above, on January 6, 1997, this federal court issued a writ of execution on the USDC Judgment against Edward Simonian in favor of Kathleen Bennett Connors, as assignee from the FDIC, as Receiver for Olympic International Bank & Trust Company. (Def. Ex. I).[6]

CAP argues that the assignment is facially invalid because (1) Lachs was not a corporate officer of CRW Financial, and there is no evidence that he had authority as the

---

[6] Unfortunately, the docket in connection with the USDC Judgment does not explain how the execution came to issue in Mrs. Connors' favor. Thus, the docket in Civil Action No. 93-11107-DPW shows that a motion for judgment was allowed as to defendant Connors on June 11, 1993, "the defendant having represented that the matter has been settled or otherwise disposed of against all other defendants." Judgment for the FDIC and against Connors was entered on June 14, 1993. The action was then reported settled on that date, and the case was closed. On March 8, 1994, a writ of execution as to Robert D. Connors in the amount of $725,270.49 was issued, although the docket does not reflect in whose favor the execution issued. The docket reflects further that on January 6, 1997, a writ of execution issued against Edward Simonian, in the amount of $725,270.49 with the notation "Modified on 01/06/1997." While this coincides with the execution produced by Mrs. Connors, the docket offers no insight as to how she acquired title.

General Manager to bind the corporation; (2) CRW Financial Inc. was not the General Partner of CNF First Associates II, LLP; and (3) as Connors' wife, Mrs. Connors was precluded from acquiring the debt.

For the reasons detailed herein, this court concludes that CAP is unable to prove that it is more likely than not that its title is superior to that of Mrs. Connors. Therefore, the defendants' motion for summary judgment is allowed.

Additional facts will be addressed below as appropriate.

### III.  ANALYSIS

#### A.  Summary Judgment Standard of Review

Summary judgment is appropriate when the moving party shows, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require

trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial.  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).

In the instant case, both parties have questioned the chain of title of the other.  They have both asked the court to draw various inferences in their favor about events that transpired years ago, and about the corporate authority of the entities involved to convey the assets in question.  They do not dispute the record submitted by the other, but rather question the completeness of that record.  Without a doubt there are numerous unanswered questions.  However, both parties have represented to the court that they do not seek the opportunity to take any other depositions or discovery, and they have both declined the court's offer to allow them time to submit additional corporate records or information.  Therefore, the issue presented by the instant motion for summary judgment is whether, based on the undisputed facts, CAP will be able to prove by a preponderance of the evidence that it holds title to the judgment it is seeking to enforce.  For the reasons detailed herein, this court finds that CAP will not be able to meet this burden.  Therefore, the defendants' motion for summary judgment is allowed.

### B. Validity of the Assignment to Mrs. Connors

It is undisputed that if the assignment to Mrs. Connors in 1996 was valid, CNF First Associates did not assign the judgment to Cadles in 2003.  See New Haven Savings

Bank v. Follins, 431 F. Supp. 2d 183, 198 (D. Mass. 2006) ("an effective assignment of a contract right transfers to the assignee all the rights and interest which the assignor had in the subject of the assignment *at the time of the assignment*") (internal punctuation, quotation and citation omitted, emphasis in original).  While CAP has raised various objections to Mrs. Connors' chain of title, they are not supported in the record.

As an initial matter, CAP argues that Lachs was not a corporate officer of CRW Financial and he had no express or implied authority to bind the corporation.  However, CAP has not cited any factual or legal support for its argument.  Lachs signed as the General Manager of the Asset Recoveries Division of CRW Financial, and his signature was notarized in that capacity.  CAP has not put forth any reason why he did not have the authority to convey assets in that capacity, or to bind the corporation.  Where, as here, "the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," summary judgment is appropriate.  Rodriquez-Fonseca v. Baxter Healthcare Corp. of P.R., 899 F. Supp. 2d 141, 147 (D.P.R. 2012) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

CAP next argues that Connors' Assignment mis-identifies CRW Financial as the General Partner of CNF First Associates.  However, this court finds that it was not inappropriate for CRW Financial to have signed the assignment as General Partner of CNF First Associates.  CRW Financial was the corporate parent of CRW California, which was the General Partner of CNF California, which was the General Partner of CNF

First Associates. Thus, the identification of CRW Financial as the General Partner of CNF First Associates was ultimately correct. The assignment was not apparently false.

Finally, CAP argues that FDIC and RTC regulations prohibited the assignment to Mrs. Connors. However, CAP has not identified any such regulations. Again, a bald assertion without any support is insufficient to defeat the motion for summary judgment.

In short, CAP's objections to the purported assignment to Mrs. Connors are unpersuasive. Moreover, at a time much closer to the transactions, Mrs. Connors provided the federal court with sufficient information about her chain of title so as to have this court issue an execution in her favor. There is nothing in the docket which indicates that at the time the FDIC challenged the issuance of an execution, or sought an execution in its own name. The evidence is insufficient to defeat Mrs. Connors' claim to the assignment of the judgment.

### C.     CAP's Chain of Title

The evidence CAP submitted to support its chain of title raises a number of questions about the validity of its title as well. As an initial matter, CAP has not even linked the reference to Landcor in the inter-corporate sale documents to the USDC Judgment at issue in this case. In fact, CAP as the purported assignee did not even reference the USDC Judgment when it commenced its action in state court. Thus, CAP has not established the very basic fact that the USDC Judgment was purported to be transferred in the various transactions on which it bases its chain of title. Similarly, CAP has not explained RTC's involvement in transferring assets, while the USDC Judgment was

entered in favor of the FDIC.  While there may be logical inferences made in support of CAP's position, the evidence is far from conclusive.

Furthermore, the record submitted by CAP shows almost weekly transfers of various partnership assets, without any explanation.  In addition, CAP has not submitted any evidence as to the authenticity or authority of the individuals who signed the numerous transfers.  Similarly, CAP has not offered any explanation as to why RMI claimed to own the Judgment in 2011.  This is not a situation where extraneous information renders CAP's version of events more persuasive.  See New Haven Savings Bank, 431 F. Supp. 2d at 198-99.  Rather, it simply raises more issues.

Under these circumstances, CAP cannot establish by a preponderance of the evidence either that Mrs. Connors' title is invalid, or that its claim to ownership of the USDC Judgment is superior to that of Mrs. Connors.  Therefore, the defendants' motion for summary judgment is ALLOWED.

## IV.  CONCLUSION

For all of the reasons detailed herein, the defendants' Motion for Summary Judgment (Docket No. 29) is ALLOWED.

    / s / Judith Gail Dein  
    Judith Gail Dein  
    United States Magistrate Judge